**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

NORMAN RAY REED, JR.

       Plaintiff*,*

v.

TRINIDAD AREA HEALTH ASSOCIATION,  a Colorado Non-Profit Corporation, d/b/a MT. SAN RAFAEL HOSPITAL, SPANISH PEAKS NEW ALTERNATIVES, INC, a Colorado Non-Profit Corporation, d/b/a HEALTH SOLUTIONS MEDICAL CENTER, and INNOVA EMERGENCY MEDICAL ASSOCIATES, P.C., a Colorado Professional Corporation

       Defendants*.*

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Norman Ray Reed, Jr., by and through his counsel Landry Law, P.C., hereby submits this Complaint and Jury Demand against Defendants, Trinidad Area Health Association, a Colorado Non-Profit Corporation, D/B/A Mt. San Rafael Hospital, Spanish Peaks New Alternatives, Inc, a Colorado Non-Profit Corporation, D/B/A Health Solutions Medical Center, and Innova Emergency Medical Associates, P.C., a Colorado Professional Corporation (collectively "Defendants"), under Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794 ("Section 504"), Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA"); Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 ("ACA"), and Colorado law prohibiting Outrageous Conduct, and state as follows:

## I.    <u>PRELIMINARY STATEMENT</u>

1.    This case arises out of Defendants' intentional discrimination against Plaintiff, a mentally ill patient who was denied treatment and equal access to Defendants' facilities.

2.      Defendants both hindered and prevented Plaintiff from benefitting from their services, and discriminated against Plaintiff unlawfully, on the basis of Plaintiff's disabling Mental Illness.

3.      Defendants refused to provide adequate and appropriate treatment to Plaintiff before, during and after he was placed on a mental health hold (M1 Hold) on November 22, 2018 pursuant to C.R.S. § 27-65-105.

4.      Defendants failed to implement policies, procedures, and practices respecting the civil rights of individuals with mental health disorders.

5.      Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure full and equal enjoyment, and a meaningful opportunity for individuals with mental health disorders to participate in and benefit from Defendants' health care services.

6.      Plaintiff brings this action seeking declaratory, injunctive, and equitable relief; compensatory damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination against Plaintiff on the basis of his disability in violation of Section 504, the ADA, the ACA, and Colorado law prohibiting Outrageous Conduct.

## II.      PARTIES

7.      Plaintiff is currently and at all times relevant to this lawsuit a resident of the State of Colorado.

8.      At all times relevant, Plaintiff was mentally ill and his Mental Illness is considered a "Disability" as that term is defined by 42 USCS § 12102 and 29 U.S.C. § 705(9).

9.      At all times relevant, Plaintiff was a drug and/or alcohol abuser and/or alcoholic.

10.     Plaintiff is a qualified individual with a disability within the meaning of Section 504, the ADA, and the ACA, because his Mental Illness substantially limits one or more of his major life activities, his medical and/or psychological records document these impairments, and he is regarded as having these impairments. *See* 29 U.S.C. § 794; 42 U.S.C. § 12102; and, 42 U.S.C. 18116(a).

11.     Defendant Trinidad Area Health Association, d/b/a Mt. San Rafael Hospital ("MSRH") is a non-profit corporation with a corporate address at 410 Benedicta Avenue, Trinidad, Colorado 81082.

12.     Defendant MSRH owns and operates a medical facility located at 410 Benedicta Ave., Trinidad, Colorado 81082, that is a place of public accommodation under Section 504, Title III of the ADA, and the ACA.  *See* 29 U.S.C. § 794; 42 U.S.C. § 12181(7)(F); and, 42 U.S.C. 18116(a).

13.     Defendant Spanish Peaks New Alternatives, Inc., d/b/a Health Solutions Medical Center ("Health Solutions") is a non-profit corporation with a corporate address of 41 Montebello Rd., Suite 200, Pueblo, CO  81001.

14.     Defendant Health Solution owns and operates a medical facility located at 417 South Indiana St., Trinidad, CO 81082, that is a place of public accommodation under Section 504, Title III of the ADA, and the ACA.  *See* 29 U.S.C. § 794; 42 U.S.C. § 12181(7)(F); and, 42 U.S.C. 18116(a).

15.     Defendant Innova Emergency Medical Associates, P.C. ("Innova") is a Colorado professional corporation with a corporate address of 9888 West Belleview Ave., #5114, Denver, Colorado 80123.

### III.     JURISDICTION & VENUE

16.     This action arises under the laws of the United States. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343 for the federal law claims, and supplemental jurisdiction  pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the acts and omissions giving rise to this Complaint occurred within the District of Colorado.

### IV.     DEFENDANTS' AGENTS, EMPLOYEES AND/OR CONTRACTORS

18.     On November 22, 2018, Nurse Jessica Trujillo was a registered nurse and employee of MSRH.

19.     On November 22, 2018, Dennis Brant, P.A. was a licensed physician's assistant, and employee of Innova, and an agent, employee and/or independent contractor of MSRH.

20.     On November 23, 2018, Dennis Brant, P.A. was the "professional person in charge of the evaluation" of Plaintiff who gave the opinion that Plaintiff "no longer require[d] evaluation or treatment" as is contemplated by C.R.S. 27-65-105(5).

21.     On November 23, 2018, Dennis Brant, P.A.'s opinion that Plaintiff "no longer require[d] evaluation or treatment" was used to satisfy the requirements of C.R.S. 27-65-105(5) for Plaintiff's release from the M1 Hold placed upon him at 11:55 p.m. on November 22, 2018 while in the care and custody of Defendants.

22.     On November 22, 2018, John Michael, M.D. was a licensed medical doctor and employee of Innova, and an agent, employee and/or independent contractor of MSRH.

23.     On November 23, 2018, John Michael, M.D. was the Medical Doctor In Charge of the Emergency Room at MSRH.

24.     On November 23, 2018, John Michael, M.D. prepared an Attestation that states: "The patient's history, exam findings, diagnostics, and a summary of any interventions or procedures were reviewed in detail with Dennis Brant PA."

25.     On November 23, 2018, John Michael, M.D.'s Attestation was used to support the opinion that Plaintiff "no longer require[d] evaluation or treatment" was used to satisfy the requirements of C.R.S. 27-65-105(5) for Plaintiff's release from the seventy-two-hour hold placed upon him at 11:55 p.m. on November 22, 2018 while in the care and custody of MSRH.

26.     On November 23, 2018, James Ashley Ward, LPC was a licensed professional counselor and employee of Defendant Health Solutions, and an agent, employee and/or independent contractor of MSRH..

27.     On November 23, 2018, James Ashley Ward, LPC was the "professional person in charge of the evaluation" of Plaintiff who gave the opinion that Plaintiff "no longer require[d] evaluation or treatment" as is contemplated by C.R.S. 27-65-105(5).

28.     On November 23, 2018, James Ashley Ward, LPC's opinion that Plaintiff "no longer require[d] evaluation or treatment" was used to satisfy the requirements of C.R.S. 27-65-105(5) for Plaintiff's release from the M! Hold placed upon him at 11:55 p.m. on November 22, 2018 while in the care and custody of Defendants.

## V.      FACTUAL ALLEGATIONS

29.     At all times relevant, Defendants were the recipients of federal financial assistance, including Medicare and/or Medicaid reimbursements.

30.     On November 22, 2018, Plaintiff was chronically mentally ill and suffered from PTSD, ADHD, anxiety, agoraphobia, bipolar disorder and schizophrenia.

31.     On November 22, 2018 at approximately 7:19 p.m. Plaintiff was intoxicated.

32.     On November 22, 2018 at approximately 7:19 p.m. Plaintiff was under the influence of Benzodiazepines and THC.

33.     On November 22, 2018 at approximately 7:19 p.m. Plaintiff had not slept for several days and had been binging on alcohol, Benzodiazepines and THC during that period of time.

34.     On November 22, 2018 at approximately 7:19 p.m. Plaintiff was having an acute psychotic episode.

35.     On November 22, 2018, Plaintiff was making verbal threats of physical violence against his mother Janet Bray.

36.     On November 22, 2018, Plaintiff was verbally abusive to his mother.

37.     On November 22, 2018 at approximately 7:19 p.m., Officers Yurcaba, Harkin and Tihonovich of the Trinidad Police Department were dispatched to Plaintiff 's residence at 716 Tillotson, Trinidad, CO  81082 for the purpose of performing a Welfare Check.

38.     On November 22, 2018, Officer Yurcaba noted that Plaintiff's mother described him as a "paranoid schizophrenic" who had been threatening to kill her.  He wrote in his report:

> Given the totality of circumstances that include: Norman Reed's aggressive behavior towards other officers and I, his indications of being intoxicated, Janet Bray's apparent fear towards her son and statement that he threatened to "slit" her throat and get rid of her, and Janet Bray's small, stooped, and frail stature, It was clear that Norman Reed was a danger to himself and/or others.

39.     On November 22, 2018, after it was determined that Plaintiff "was a danger to himself and others", Officer Yurcaba transported Plaintiff to MSRH for a medical clearance.

40.     On November 22, 2018, once at MSRH, Plaintiff used profane language towards the Emergency Room Clerk and refused treatment.

41.     On November 22, 2018, the Trinidad Police transported Plaintiff from MSRH to Crossroads' Turning Points, Inc. detox center (hereinafter "Crossroads'") at 1004 Carbon Place, Trinidad, CO, 81082.

42.     On November 22, 2018 at 8:00 p.m., while at Crossroads Turning Points' detox center, Officer Yurcaba provided the information for, completed and/or signed an APPLICATION FOR EMERGENCY COMMITMENT OF INTOXICATED OR INCAPACITATED PERSON UNDER SECTION 27-81-111 C.R.S. noting that Plaintiff was "Intoxicated & clearly dangerous to the health & safety of himself/herself or others".

43.     On November 22, 2018,  while at Crossroads', Plaintiff threatened the staff of Crossroads'.

44.     On November 22, 2018,  while at Crossroads Turning Points' detox center, Plaintiff ripped a Pepsi can in half and mutilated himself with the torn metal.

45.     On November 22, 2018, the staff of Crossroads Turning Points called the Trinidad Police Department to report Plaintiff's threats and self-harm.

46.     On November 22, 2018, at approximately 9:58 p.m. the Trinidad Police Department transported Plaintiff from Crossroads Turning Points to the emergency department at MSRH.

47.     On November 22, 2018, at approximately 10:03 p.m., Nurse Summer Davis of MSRH noted that the Trinidad Police Department reported that Plaintiff cut his wrists with a pop can and was stating that he was going to kill himself and other people.

48.     On November 22, 2018 at approximately 10:03 p.m., Nurse Jessica Trujillo noted "Security at bedside"

49.     On November 22, 2018, at approximately 10:26 p.m. Mr. Brant noted that Plaintiff was on an M1 hold for homicidal, suicidal statements.

50.     On November 22, 2018, at approximately 10:26 p.m., Mr. Brant noted "no previous psychiatric diagnosis known."

51.     On November 22, 2018, at approximately 10:26 p.m., Mr. Brant noted past medical history "schizophrenia, ADHD"

52.     On November 22, 2018, at approximately 10:59 p.m., Nurse Jessica Trujillo noted "Patient appears to be in no apparent distress at this time"

53.     On November 22, 2018, at approximately 10:59 p.m., Nurse  Jessica Trujillo noted "Pt. states he is going to stab himself in the face multiple times with a scalpel until he gets what he wants".

54.     On November 22, 2018 at approximately 11:13 p.m. a blood alcohol test and drug urine screen were taken from Plaintiff.

55.     On November 22, 2018, at approximately 11:31 p.m., Nurse Jessica Trujillo noted that Plaintiff stated, "he was not going to let us do anything, he was going to fight."

56.     On November 22, 2018, at approximately 11:31 p.m., Nurse Jessica Trujillo noted that "Patient appears in no apparent distress at this time."

57.     On November 22, 2018, at approximately 11:45 p.m., Nurse Jessica Trujillo noted that Plaintiff "is continually talking and cursing at police officers".

58.     On November 22, 2018 at approximately 11:55 p.m., Officer Yurcaba completed an Emergency Mental Illness report that noted Plaintiff had "ideas of being persecuted", "Homicidal Thoughts" and "Suicidal Thoughts".

59.     On November 22, 2018 at approximately 11:55 p.m., Officer Yurcaba completed an Emergency Mental Illness report that stated:

> "Person threatening to "slit mother's throat" while yelling at her.  Person went after officer when back turned.  Person resisting.  Person a danger to self/others."

60.     On November 23, 2018 at approximately 12:01 a.m., Nurse Jessica Trujillo noted that Plaintiff "continues to talk and threaten officers and staff."

61.     On November 23, 2018, at approximately 12:08 a.m., Mr. Brant noted that Plaintiff's ETOH interpretation was "Abnormal 112".

62.     On November 23, 2018, at approximately 12:09 a.m., Mr. Brant noted that Plaintiff's urine test was positive for Benzodiazepines.

63.     On November 23, 2018, MSRH administered additional benzodiazepines to Plaintiff per the nurses note at 1:16 a.m. which states "Ativan 0.5 mg."

64.     On November 23, 2018 at approximately 2:19 a.m., Mr. Ward arrived at MSRH.

65.     On November 23, 2018, prior to speaking with Plaintiff, Mr. Ward reviewed the M1 hold application.

66.     On November 23, 2018, prior to speaking with Plaintiff, Mr. Ward spoke with a Trinidad Police Officer about Plaintiff.

67.     On November 23, 2018 at approximately 2:19 a.m., Mr. Ward performed a Crisis Assessment of Plaintiff.

68.     When Mr. Ward performed his Crisis Assessment of Plaintiff, Plaintiff was intoxicated by alcohol, Benzodiazepines and THC.

69.     On November 23, 2018, Mr. Ward noted in the Crisis Assessment of Plaintiff, that he: "Cannot obtain accurate Mental Status due to intoxication on: Norman was not presenting as intoxicated but did present as both nervous and elated in his mood."

70.     On November 23, 2018, Mr. Ward noted in the Crisis Assessment of Plaintiff: "Substance Use History: Norman denied any history of substance use problems, even when confronted ,about alcohol use."

71.     On November 23, 2018, at approximately 3:32 a.m., Mr. Brant wrote the following in the MSRH medical records:

> **Differential diagnosis;** drug withdrawal. acute psychotic break, depression, psychosis secondary to non-compliance.
>
> **Data reviewed:** vital signs, nurses notes, EMS record, lab test result(s), radiologic studies, plain films. ED **course:** Patient was brought to the emergency department by PD secondary to suicidal homicidal ideations at detox. Patient been threatening detox staff. While in the emergency room patient has been pleasant and very talkative. He may no (sp) threatening remarks or postures. Patient denied being suicidal homicidal and was not gravely disabled he had been placed on an M1 hold by PD secondary to statements he had made a detox. Patient's labs were reviewed and he had mental health exam by assessment referral team member. Assessment referral team member Does not feel patient is Harmful to himself Or others l concur with this And we our safety planning Patient to home. Patient to recheck in the emergency Department if symptoms worsen, new symptoms Develop, or as needed.

72.     On November 23, 2018, at approximately 3:55 a.m., Defendants and their agents, employees and/or independent contractors released Plaintiff from MSRH.

73.     On November 23, 2018, at approximately 3:55 a.m., when Plaintiff was released from MSRH, it was approximately 40-44 degrees Fahrenheit in Trinidad, Colorado.

74.     On November 23, 2018, at approximately 3:55 a.m., when Plaintiff was released from MSRH, he was only wearing a t-shirt, a pair of shorts and shoes.

75.     On November 23, 2018, following his release from MSRH, Plaintiff walked to his mother's house.

76.     On November 23, 2018, following his release from MSRH, Plaintiff held his mother at knifepoint from approximately 4:30 a.m. on November 23, 2018 until he was arrested at approximately 11:10 p.m. on November 24, 2018.

77.     On November 23, 2018 at 7:49 a.m., approximately four hours after Plaintiff had been released from MSRH, Plaintiff's attending physician at MSRH, Dr. John Michael, wrote the following in the MSRH medical records:

> **Attestation**: The patient's history, exam findings, diagnostics, and summary of any interventions or procedures was reviewed in detail with Dennis Brandt PA.
>
> **Disposition:**
>
> **11/23/18 03:3.7 Discharged to Home with Self Care. Impression: Alcohol dependence, uncomplicated Unspecified disorder of adult personality and behavior.**
>
> • Condition is Good.
> • Discharge Instructions: Alcohol Use Disorder.
> • Medication Reconciliation Form.
> • Follow up: MSRH, Clinic; When: 5 - 6 days; Reason: If symptoms return Continuance of care.
> • Follow up: Emergency Department; Reason: If symptoms return, Worsening of condition.
> • Problem is new.
> • Symptoms are resolved.

78.     Prior to Plaintiff's release from MSRH, Defendants and their agents, employees and/or independent contractors failed to comply with the requirements of C.R.S. 27-65-105.

79.     Prior to Plaintiff's release from MSRH, Defendants and their agents, employees and/or independent contractors failed to comply with MSRH's Policy titled "Patient Requiring Psychiatric Evaluation" during their treatment and evaluation of Plaintiff.

80.     Prior to Plaintiff's release from MSRH, Defendants and their agents, employees and/or independent contractors failed to comply with the "Practice Guideline for the Psychiatric Evaluation of Adults, Second Edition, June 2006" during their treatment and evaluation of Plaintiff.

81.     Defendants and their agents, employees and/or independent contractors refused to provide Plaintiff the care and treatment that he needed, because of his mental health disability.

82.     As a result of the attack on his mother on November 23, 2018 until November 24, 2018, Plaintiff was found guilty of felony assault and menacing.

83.     On or about January 2, 2019, as a result of that felony assault and menacing charges, Plaintiff was sentenced to the Colorado Department of Corrections for thirty months plus an additional twenty-four months of parole.

84.     Plaintiff suffered economic loss as a result of his arrest and imprisonment, and experienced substantial loss of liberty and restrictions on freedoms that are basic to life, liberty, and the pursuit of happiness, such as diet, sleep, human contact, social activity, family relations, educational opportunity, vocational opportunity, athletic opportunity, sexual activity, travel, and more.  In addition to those injuries and damages, Plaintiff also suffered physical attacks.  While serving his sentence at the Colorado Department of Corrections, Plaintiff was beaten and raped by other inmates.

85.     The above-described attack on Plaintiff's mother could not have occurred if Defendants and their agents, employees and/or independent contractors had not improperly and prematurely released Plaintiff from MSRH on November 23, 2018.

86.     The above-described attack on Plaintiff's mother would not have occurred if Defendants and their agents, employees and/or independent contractors had provided Plaintiff with the care and treatment that he needed prior to his improper and premature release from MSRH on November 23, 2018.

87.     Defendants and their agents, employees and/or independent contractors refused to provide Plaintiff with the care and treatment that he needed prior to his release from MSRH on November 23, 2018, because of his mental health disability.

88.     Plaintiff would not have been incarcerated with the Colorado Department of Corrections if Defendants and their agents, employees and/or independent contractors had not improperly and prematurely released Plaintiff from MSRH on November 23, 2018.

89.     Plaintiff would not have been incarcerated with the Colorado Department of Corrections if Defendants and their agents, employees and/or independent contractors had provided Plaintiff with the care and treatment that he needed prior to his improper and premature release from MSRH on November 23, 2018.

90.     Defendants and their agents, employees and/or independent contractors knew that Plaintiff had mental health disorders and was making threats of harm to himself and others.

91.     Defendants and their agents, employees and/or independent contractors knew that Plaintiff was a drug and/or alcohol abuser and/or alcoholic

92.     Defendants and their agents, employees and/or independent contractors knew or should have known of their obligation as a health care provider under the ADA, the RA, and their equivalents to develop policies to promote compliance with these statutes and to provide reasonable evaluation and diagnosis, including but not limited to placing him on an M1 Hold and referral for mental health care and treatment.

93.     Defendants and their agents, employees and/or independent contractors knew or should have known that their actions and/or inactions created an unreasonable risk of causing harm to himself or others more than an individual without a mental health disorder and leading to injury, arrest and/or imprisonment.

94.     Defendants and their agents, employees and/or independent contractors prevented Plaintiff from benefitting from its services by failing to require a M1 Hold and releasing him from the hospital.

95.     Defendants intentionally discriminated against Plaintiff and acted with deliberate indifference to his federally protected rights.

96.     Defendants intentionally discriminated against Plaintiff because of his mental illness.

97.     Defendants' intentional discrimination against Plaintiff on the basis of his disability prevented him from obtaining federal benefits, including Medicaid benmefits.

98.     Defendants' intentional discrimination against Plaintiff on the basis of his disability is reflected by Defendants' failure to train their agents, employees and/or independent contractors, and promulgate policies of non-discrimination against mentally disabled individuals.

99.     Defendants' intentional discrimination against Plaintiff, and Plaintiff's  mental health disability, caused Plaintiff to suffer loss of economic damages and loss of liberty and restrictions that are basic to life, liberty and the pursuit of happiness

100.     Defendants' intentional discrimination against Plaintiff caused him to experience severe emotional distress and physical abuse.

101.     Plaintiff is entitled to equal access to services offered by Defendants as are enjoyed by non-disabled persons.

102.     Plaintiff still wishes to access Defendants' services and receive care in Defendants' facilities as it is the closest hospital to his home but is being prevented from doing so by Defendants' discrimination against his on the basis of his disability.

## VI.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Section 504; 29 U.S.C. § 794)
(All Defendants)

103.     Plaintiff hereby incorporates the allegations in all preceding paragraphs in support of

this claim.

104.    Section 504 prohibits discrimination on the basis of disability by recipients of federal financial assistance. 28 U.S.C. §794(a).

105.    Defendants receive federal financial assistance.

106.    Plaintiff is mentally ill and is an individual with a disability within the meaning of Section 504. 29 U.S.C. § 705(9) (incorporating by reference 42 U.S.C. § 12102). Plaintiff was qualified to participate in Defendants' aids, benefits, and services within the meaning of Section 504.

107.    Defendants have injured Plaintiff in violation of 29 U.S.C. § 794 and its implementing regulations, by engaging in discriminatory acts or practices including, but not limited to, the following:

    a.  Maintaining a pattern and practice of discrimination against Plaintiff;

    b.  Intentionally failing to accommodate Plaintiff's disability by refusing to comply with policies and guidelines regarding Patients Requiring Psychiatric Evaluation;

    c.  Intentionally failing to accommodate Plaintiff's disability by refusing to comply with policies and guidelines pursuant to C.R.S. § 27-65-105.

    d.  Failing to make reasonable modifications in policies, practices, or procedures, when such modifications were necessary to afford Plaintiff with access to Defendants services, programs, or activities, and when such modifications would not be unduly burdensome and would not fundamentally alter the nature of services provided by Defendants;

    e.  Excluding Plaintiff from and denying Plaintiff from participation in the

benefits of Defendants' services, programs, or activities solely by reason of Plaintiff's disability;

f.   Intentionally failing to conduct a thorough Crisis Assessment to determine if Plaintiff would be a threat to himself or others if released from the M1 Hold;

g.   Intentionally failing to conduct a thorough Crisis Assessment to determine if Plaintiff needed additional care and treatment.

h.   Intentionally releasing Plaintiff prematurely from the M1 Hold.

i.   Intentionally failing to provide Plaintiff necessary care and treatment.

108.   Defendants' actions described in this Complaint were intentional and/or were taken with deliberate indifference to the strong likelihood that pursuit of its questioned policies would likely result in a violation of Plaintiff's rights under Section 504.

109.   As a direct and proximate result of the acts, omissions, and violations alleged above, Plaintiff has suffered damages, both real and intangible, including, but not limited to, pain and suffering, humiliation, inconvenience, physical injury, and emotional distress.

110.   Plaintiff has been injured and aggrieved by and will continue to be injured and aggrieved by Defendants' discrimination.

111.   Plaintiff is entitled to compensatory damages, attorneys' fees and costs and any other relief to the fullest extent permitted by law and in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
(Americans with Disabilities Act; 42 U.S.C. § 12181)
(Against Defendants MSRH & Health Solutions)

112.   Plaintiff hereby incorporates the allegations in all preceding paragraphs in support of this claim.

113.     Title III of the ADA prohibits discrimination on the basis of disability by entities such as Defendants who own, operate, or lease places of public accommodation. *See* 42 U.S.C. § 12182(a).

114.     The medical facilities owned and operated by Defendant MSRH at 410 Benedicta Ave., Trinidad, Colorado 81082 and by Defendant Health Solutions at 417 South Indiana St., Trinidad, CO 81082, are places of public accommodation pursuant to Title III of the ADA. 42 U.S.C. § 12181.

115.     At all times relevant to this action, Plaintiff has had PTSD, ADHD, anxiety, agoraphobia, bipolar disorder and schizophrenia. Plaintiff has therefore been an individual with a mental health disability of Section 1557 of the Patient Protection and Affordable Care Act.

116.     Plaintiff is an individual with a disability within the meaning of the ADA. 42 U.S.C. § 12102. Plaintiff was qualified to participate in Defendants' goods, services, facilities, privileges, advantages, and accommodations within the meaning of Title III of the ADA.

117.     Defendants MSRH and Health Solutions have injured Plaintiff in violation of Title III of the ADA and its implementing regulations, by engaging in discriminatory acts or practices as described herein.

118.     Defendants MSRH and Health Solutions denied Plaintiff services and otherwise treated him differently on the basis of his disability, thereby violating Title III of the ADA.

119.     Plaintiff has been injured and aggrieved by and will continue to be injured and aggrieved by the discrimination of Defendants MSRH and Health Solutions.

120.     Plaintiff is entitled to injunctive relief, reasonable attorney's fees and costs and any other such relief as permitted by law. 42 U.S.C. § 2000a-3.

## THIRD CLAIM FOR RELIEF

(Affordable Care Act, 42 U.S.C. §18001 et seq.)

(Against All Defendants)

121.    Plaintiff hereby incorporates the allegations in all preceding paragraphs in support of this claim.

122.    Defendants are subject to the requirements of the ACA because they receive federal funds to support services and/or programs, including, but not limited to, meaningful use of Medicaid funds.

123.    Plaintiff is a qualified individual with a disability as defined by the ACA incorporating Section 504 of the Rehabilitation Act and was subject to discrimination because he is an individual with a disability.

124.    Section 1557 of the ACA specifically ensures that an individual is not excluded from participating in, denied benefits because of, or subjected to discrimination as prohibited under the ADA incorporating Section 504 of the Rehabilitation Act, under any health program or activity, any part of which is receiving federal financial assistance, or under any program or activity that is administered by an Executive Agency or any entity established under Title I of the ACA and its amendments. 42 U.S.C. 18116(a).

125.    At all times relevant to this action, Defendants received federal financial assistance, including Medicare and/or Medicaid reimbursements, and have been principally engaged in the business of providing health care. Therefore, Defendants are a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

126.    Pursuant to Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be

subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

127.     Federal regulations implementing Section 1577 of the Patient Protection and Affordable care act provide that "A recipient to which this subpart applies that operates a general hospital or outpatient facility may not discriminate in admission or treatment against a drug or alcohol abuser or alcoholic which is suffering from a medical condition because of the persons drug or alcohol abuse or alcoholism, 45 C.F.R. 84.53.

128.     Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity shall take reasonable steps to provide meaningful access to each individual with limited English proficiency eligible to be served or likely to be encountered in its health programs and activities." 45 C.F.R. § 92.201.

129.     Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities." 45 C.F.R.§ 92.202(a).

130.     Defendants' intentionally discriminated against Plaintiff because of his Mental Illness by refusing to provide him necessary medical treatment and releasing him prematurely from the M1 Hold.

131.     Defendants intentionally discriminated against Plaintiff, on the basis of disability, in violation of the Patient Protection and Affordable Care Act and its implementing regulations.

132.     Defendants' intentionally failed to establish policies, practices and procedures required under the ACA to ensure that persons who are mentally ill are not subjected to discrimination.

133.    Defendants denied Plaintiff the necessary treatment and discriminated against Plaintiff intentionally because he is mentally ill and they acted with reckless disregard for Plaintiff's federally protected rights.

134.    As a direct and proximate result of the acts, omissions, and violations alleged above, Plaintiff has suffered damages, both real and intangible, including, but not limited to, pain and suffering, humiliation, inconvenience, physical injury, and emotional distress.

135.    Plaintiff has been injured and aggrieved by and will continue to be injured and aggrieved by Defendants' discriminatory policies.

136.    Plaintiff is therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

### FOURTH CLAIM FOR RELIEF
(Outrageous Conduct; Colorado law)
(Against All Defendants)

137.    Plaintiff hereby incorporates the allegations in all preceding paragraphs in support of this claim.

138.    Outrageous Conduct claims are described as causing an average member of the community would view the conduct and exclaim, "Outrageous!" *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381 (10th Cir. 1988); *Christen-Loper v. Bret's Electric, LLC*, 175 F.Supp.3d 1213 (D. Colo. 2016).

139.    Outrageous Conduct claims are available when a defendant engages in extreme and outrageous conduct, either recklessly or with the intent of causing the plaintiff severe emotional distress, and when the plaintiff incurred severe emotional distress caused by a defendant's conduct.

140.     Defendants were aware that Plaintiff was mentally ill and intentionally discriminated against him by refusing to provide him equal access to its facilities and services.

141.     Defendants were aware that by releasing Plaintiff from the M1 Hold, he would be a threat to himself and others, and intentionally discriminated against him by refusing to provide him equal access to their facilities and services.

142.     Defendants intentionally denied Plaintiff services and otherwise treated him differently on the basis of his disability.

143.     Defendants' conduct was carried out with wanton, conscious, reckless, and outrageous disregard for Plaintiff's civil rights, mental health, and welfare.

144.     Defendants outrageous conduct has directly and proximately caused Plaintiff injury and he is entitled to compensatory damages and punitive damages and any other relief to the fullest extent permitted by law and in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

a.        The Court assume jurisdiction.

b.        The Court declare that the actions of Defendants described in this Complaint are in violation of under Section 504 of the Rehabilitation Act, Title III of the Americans with Disabilities Act Amendment Act of 2008, the Affordable Care Act, the Colorado Anti-Discrimination Act and Outrageous Conduct.

c.        The Court enter the following injunction:

   i.   Defendants must cease discrimination on the basis of disability including, but not limited to, mentally ill patients.

   ii.  Defendants shall be required furnish appropriate services where necessary to

ensure effective communication with people with disabilities including those who are mentally ill.

iii. Defendants shall designate and shall continue to designate an ADA Compliance Officer. Defendants shall ensure that the ADA Compliance Officer undergoes training on Defendants' obligations under the ADA, at the expense of Defendants. The ADA Compliance Officer shall be responsible for handling disability-related complaints and for ensuring Defendants' continued compliance with the ADA.

iv. Defendants shall develop an ADA Complaint Resolution Policy to address ADA-related complaints. This policy shall identify the ADA Compliance Officer, the procedure for filing complaints, and the process by which complaints will be investigated and resolved.

v. The ADA Complaint Resolution Policy shall be communicated to all Defendants' employees.

vi. Defendants shall retain a consultant to certify that all policies, alterations or additions to the facilities, will comply with the requirements of the ADA.

vii. Defendants shall, under the direction of the ADA Compliance Officer, train all Defendants' supervisors and managers on the obligations under the ADA. Defendants shall ensure that all newly hired supervisors and managers receive this training within thirty (30) days of hire or promotion.

d. The Court award Plaintiff damages and relief including compensatory damages to the maximum extent permitted by law.

e. Reasonable costs and attorneys' fees.

f.      Interest on all amounts at the highest rates and from the earliest dates allowed

by law;

g.      Any and all other relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all of the issues a jury properly may decide, and for

all of the requested relief that a jury may award.

Dated: November 22, 2022

Respectfully submitted,

_/s/ Scott P. Landry_____
Scott P. Landry
Landry Law, P.C.
9896 Rosemont Avenue, Suite 104
Lone Tree, Colorado  80124
Telephone: (720) 583-2143
Facsimile: (720) 583-2483
E-mail: slandry@landrylawpc.com